**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **NEBRASKA MACHINERY COMPANY, a Nebraska corporation;** | **8:14CV91** |
| **Plaintiff,** | |
| **vs.** | **MEMORANDUM AND ORDER** |
| **ERICKSON PRODUCTIONS, INC., a California corporation; and JIM ERICKSON, an individual;** | |
| **Defendants.** | |

This matter is before the Court on the Motion to Dismiss Complaint or, in the alternative, to Transfer Venue (Filing No. 17), filed by Defendants Erickson Productions, Inc. ("Erickson Productions") and Jim Erickson ("Erickson") (collectively "Defendants"). For the reasons discussed, the Motion will be granted, and this case will be dismissed without prejudice.

## BACKGROUND

For purposes of the pending Motion, the Court accepts as true all well-pled factual allegations in the Plaintiff's' Amended Complaint (Filing No. 7), although the Court need not accept Plaintiff's legal conclusions. The Court has considered additional evidence with respect to jurisdictional issues (*see* Filing Nos. 19, 20, 23.) The following is a summary of the factual allegations.

Plaintiff, Nebraska Machinery Company ("NMC") is a Nebraska corporation with its principal place of business in Omaha, Nebraska. NMC is a dealer of heavy machinery, and sells or leases products manufactured by industry leaders such as

Caterpillar for use in the construction, power generation, material, trucking, agriculture, and railroad industries.

Erickson is a resident of the state of California, and is the owner of Erickson Productions. (Filing No. 20 at ECF 3 ¶ 18.) Erickson Productions is a California corporation with its principal place of business in Petaluma, California. Erickson Productions is not registered to do business in the state of Nebraska. It does not have any offices in Nebraska, nor does it have any employees, officers, members, or agents who work or live in Nebraska. (*Id.* at ECF 2 ¶¶ 8, 9.) Erickson Productions is the sole U.S. distributor and licensor of photographic images taken by Erickson. (*Id.* at ECF 1 ¶ 4.)

In 2012, NMC began a redesign of its company website, www.nmc-corp.com. The NMC employee in charge of the redesign proposed the use of various digital images as background and website banners. The proposed images were drawn from NMC's own photographs, a machinery manufacturer's photograph collection, and from the Internet, including images found on Erickson's website (the "Photographs"). An NMC employee obtained the Erickson images by using the right-click function on images contained in the Erickson website, and copying and pasting the images into the draft redesign.

The NMC employee in charge of the redesign received internal approval for the draft redesign of the website, then sought Erickson Productions' permission to use the Photographs on NMC's redesigned website by completing and submitting an online

form through the Erickson website, www.ericksonstock.com, which Erickson Productions made available to attract those seeking a nonexclusive license to use its images. In its request, NMC provided links to unpublished examples of NMC's proposed and internally approved use of the Photographs in the redesigned website, which had not been launched.

In response to NMC's inquiry, a representative of Erickson contacted the NMC employee by telephone to discuss NMC's intended use of the Erickson Images and related licensing.  During the conversation, the Erickson representative confirmed that NMC was not operated or owned by Caterpillar, and the parties discussed a licensing fee of $400 for a nonexclusive license for the Erickson Images.  The NMC employee agreed to the proposed amount and asked the Erickson representative to provide a license and written invoice for the cost of licensing the Erickson Images.  The NMC employee provided his email for delivery of the requested materials; however, Erickson did not provide the license and invoice as discussed.

NMC launched its new website in December 2012, although NMC had not received the license from Defendants. When launched, the redesigned website included the Photographs which still displayed the Erickson watermark, as the images appear on Erickson's website.  Generally, once a written license is signed, Erickson Productions provides a high resolution version of the image without the watermark.  NMC believed it substantially completed the process for obtaining a written license, and was waiting for confirmation and delivery of the high resolution images before replacing the draft

3

images with high resolution images. NMC also expected to be invoiced for the promised license from Erickson.

On or about January 21, 2014, counsel for Defendants contacted NMC claiming that NMC was using numerous photos created and owned by Erickson, and such use was without a proper license. Defendants' counsel advised NMC that this unlicensed use of Erickson's copyright photos infringed Erickson's copyrights and demanded that NMC cease and desist using the photos. Upon receipt of the letter, NMC removed the draft images from its website and began discussing the accusations with Erickson's attorney. Erickson threatened litigation against NMC for copyright infringement and demanded $900,000 in damages for alleged copyright infringement of the Erickson Images.

Erickson now disputes that the parties discussed a $400 licensing fee, or that NMC was ever quoted a licensing fee.  Given the large sum of damages that Defendants seek, and the threat of being sued in a foreign and/or inconvenient jurisdiction, NMC filed this action to seek a declaration of its legal rights. Specifically, NMC seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, that NMC did not infringe copyrights allegedly owned by Erickson in certain photographs at issue, and that damages for infringement, if any, are minimal.

Defendants dispute NMC's factual allegations. Defendants also assert that Erickson Productions is not registered to do business in Nebraska, nor does it have any employees, officers, members, or agents who live or work in Nebraska. (Filing No. 20 ¶¶

4

7-12.) Erickson Productions asserts that it never licensed the Photographs to NMC, or to any customers in Nebraska. (*Id.* ¶ 14-15.) Erickson Productions has no record of any communication or correspondence with NMC, or any of its employees or agents. (*Id.* ¶ 13.) Erickson Productions has not licensed any photographs to any Nebraska customers within the last five years. (*Id.* ¶ 17.)

### STANDARD OF REVIEW

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case showing there is personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The Court "views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor." *Id.* To withstand Defendants' motion under Fed. R. Civ. P. 12(b)(2), Plaintiffs "must state sufficient facts in the complaint to support a reasonable inference that [Defendants] may be subjected to the jurisdiction of the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). Plaintiffs' prima facie case "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (internal quotations and citations omitted).

### DISCUSSION

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska

long-arm statute are satisfied and (2) whether the exercise of jurisdiction over this Defendant will violate the Fourteenth Amendment Due Process Clause. *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 911 (8th Cir. 2014).  Because Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2008),[1] has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution, *Ameritas Inv. Corp. v. McKinney*, 694 N.W.2d 191, 199 (Neb. 2005), the Court need only determine whether the assertion of jurisdiction offends constitutional limits.[1]

---

[1] Neb. Rev. Stat. § 25-536 provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

    (a) Transacting any business in this state;

    (b) Contracting to supply services or things in this state;

    (c) Causing tortious injury by an act or omission in this state;

    (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

    (e) Having an interest in, using, or possessing real property in this state; or

    (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

[1] NMC argues that Defendants transacted business in Nebraska and, construed liberally, the Complaint suggests that NMC believed the parties entered into some form of an oral licensing agreement. Because the Court concludes that personal jurisdiction over Defendants would violate due process, it

Due process requires that a defendant have sufficient minimum contacts with the forum state such that summoning the defendant would not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 475, 476 (1985). "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro*, 340 F.3d at 562 (citing *Clune v. Alimak Ab*, 233 F.3d 538, 544 n. 8 (8th Cir. 2000)). The minimum contacts must be such that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State" and "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 475 (citations omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch,* 518 F.3d at 586 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984)). "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." *Id.* at 586. "The plaintiff must make a prima facie showing, however, that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (quoting *Keeton*

---

need not discuss whether Defendants' actions fall within the other provisions of Nebraska's long-arm statute.

*v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)).  "Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.* (citing *Burger King,* 471 U.S. at 472).

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "'fair play and substantial justice.'"  *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. at 320).  The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."  *Downing*, 764 F.3d at 912 (citing *Steinbuch*, 518 F.3d at 586) (internal marks omitted).  "The third factor applies only on the question of whether specific jurisdiction exists, and the last two factors 'carry less weight and are not dispositive.'" *Id.* (internal citations omitted) (quoting *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006)).  Evaluating the factors, the Court concludes that it lacks personal jurisdiction over Defendants.

## I.      Specific Jurisdiction

NMC argues that Defendants' contacts include (1) providing an interactive website, (2) responding to NMC's inquiry with a phone call, and (3) contacting NMC with the cease and desist letter. Viewing the evidence in a light most favorable to NMC, the Court concludes these contacts are insufficient individually or collectively to establish personal jurisdiction over defendants.[2]

### A.    Erickson Productions Website

To determine whether an Internet website or presence provides sufficient minimum contact to invoke specific jurisdiction, the Eighth Circuit adopted the analytical approach pronounced in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710 (8th Cir. 2003) (citing *Zippo*, 952 F.Supp. at 1124). In *Zippo*, the court held that the "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Zippo*, 952 F.Supp. at 1124. To measure the nature and quality of the commercial activity, the Eighth Circuit uses a "sliding scale" approach:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make

---

[2] The Court's analysis focuses on NMC's assertion of specific jurisdiction over Defendants because NMC only argued specific jurisdiction. For the reasons set forth below in part B., the Court will not permit jurisdictional discovery to determine whether Defendants are subject to general jurisdiction in Nebraska.

information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin*, 348 F.3d at 710-11 (citing *Zippo*, 952 F.Supp. at 1124).

In *Lakin*, the Eighth Circuit found that the website it was asked to examine fell into the "middle ground" of the *Zippo* analysis, and ultimately held that such a website was not sufficient to establish general personal jurisdiction without more evidence concerning the quantity of the website's contacts with the forum state. *Id.* at 712–13.[3]

NMC does not specifically argue that Defendants' Internet activities subject it to general jurisdiction in Nebraska, but argues that because the website was more than passive, Defendants were subject to specific jurisdiction. NMC argues that the website was more than interactive because it permitted users to access photographs using the copy and paste function and because it permitted NMC to contact Defendants via email through a link on the website. The Court concludes that neither of these aspects of the website made the website more than passive.

First, NMC suggests that because it was able to copy and paste the Photographs from the Erickson Production website, the website was interactive. NMC alleges that, on "information and belief, a website viewer's right-click function may be disabled to prevent copying of content, including images, from a website by its viewer. This

---

[3] Although the court in *Lakin* was asked to address Internet contacts in the context of general jurisdiction, the court agreed that the *Zippo* model was an appropriate approach in cases of specific jurisdiction. *Id.* at 711.

capability is common knowledge in the web design industry." (Filing No. 7 ¶ 14.) Thus, according to NMC, because it was able to copy and paste the Photographs, the website was interactive. The Court disagrees. There is no evidence that Defendants intended to permit website users to copy photos from the website. Defendants included a watermark on all photographs in an apparent attempt to discourage copying. The Court cannot conclude that by failing to prevent viewers from copying photos directly from the website the Defendants intended to avail themselves of doing business in Nebraska, or any other jurisdiction.

Second, a website's capacity to receive a message from a viewer does not make the website more than passive. Courts have held that "a website is still considered passive and insufficient to confer jurisdiction where, as here, the only purported 'exchange of information' available on the website is a direct link allowing a user to contact the seller and does not allow for any part of a transaction to occur online." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 569 (E.D.N.Y. 2011) (citing *Stephan v. Babysport, LLC*, 499 F.Supp.2d 279, 288 (E.D.N.Y. 2007)). NMC employee Jason McCants contacted Defendants through the "Contact Us" section of the Defendants' website. (Filing No. 19-3.) The contact us page allows the customer to enter first name, last name, company, email, phone and question/comment. (Filing No. 19-6.) Although NMC attempts to categorize this communication as a request for a written license, there is no evidence that the "Contact Us" link allowed any part of a business transaction to occur through the website. Accordingly, based upon the

11

evidence in the record, the Court concludes that Defendants' website did little more than make information available to potential customers, and was insufficient to confer personal jurisdiction.

### B.    Telephone Call to NMC

NMC asserts that, in response to its online inquiry to Defendants, a representative of Erickson Productions contacted NMC by telephone to negotiate a license agreement. Defendants have no record of any call made to NMC, and accordingly deny any call was made. Nevertheless, even viewing the evidence in a light most favorable to NMC, a single phone call is insufficient to support personal jurisdiction. The Eighth Circuit has said that "[t]he use of interstate facilities, such as telephones or mail, is a 'secondary or ancillary' factor 'and cannot alone provide the 'minimum contacts' required by due process.'" *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995) (quoting *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982)). The same Court has held that "some emails and phone calls" are "insufficient to establish personal jurisdiction." *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 823 (8th Cir. 2014) (citing *Viasystems, Inc. v. EBM Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (holding that scattered e-mails, phone calls, and a wire-transfer of money to a Missouri corporation did not constitute a "deliberate" and "substantial connection" with the state such the defendant could "reasonably anticipate being haled into court there.")).

Here, a single phone call is insufficient to establish personal jurisdiction. In the phone call, a representative of Defendants and a representative of NMC allegedly reached an agreement on the price of the license, and the NMC representative requested that the license and invoice be emailed to him. The NMC representative believed the licensing process was complete, and that he was merely waiting for confirmation of the license. Even if the licensing process was essentially complete, the existence of a contract between NMC and Defendants would be insufficient on its own to establish personal jurisdiction. *Id.* at 821.

### C.   *Cease and Desist Letter*

Finally, NMC argues that the cease and desist letter from Defendants supports a finding of personal jurisdiction. This Court has held that a cease and desist notice for copyright infringement to a company in Nebraska is not sufficient to establish personal jurisdiction over the sender. *Integrity Mgmt. of Florida, L.L.C. v. Dental Websmith, Inc.*, No. 4:08CV3079, 2008 WL 4372878, at *5 (D. Neb. Sept. 19, 2008) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006)). NMC argues that the cease and desist letter, when considered with Defendants' website and the alleged telephone call to NMC, show that Defendants contacts were sufficient. However, as discussed above, Defendants' website was passive, and Defendants made, at most, a single phone call to NMC. These contacts, collectively and individually, are not sufficient to establish specific personal jurisdiction over Defendants.

### II.   General Jurisdiction, and Jurisdictional Discovery

NMC does not argue that this Court has general personal jurisdiction over Defendants, but NMC states that it has not waived such an argument. Rather, it suggests that general jurisdiction *may* exist, and requests an opportunity for discovery to determine whether Defendants' contacts with Nebraska were systematic and continuous. "When the plaintiff offers 'documentary evidence, and not merely speculations or conclusory allegations,' about a defendant's contacts with the forum, a district court should not dismiss the action for lack of personal jurisdiction over the defendant 'without permitting him to take some jurisdictional discovery to establish whether general personal jurisdiction would be justified.'" *Marolf v. AyA Aguirre & Aranzabal S.A.*, No. 4:09CV3221, 2010 WL 964956, at *2 (D. Neb. March 10, 2010) (quoting *Steinbuch*, 518 F.3d at 589).

NMC argues that documentary evidence and contradictions in the record support the need for jurisdictional discovery to determine whether Defendants are subject to general jurisdiction in Nebraska. Other than the cease and desist letter, however, NMC has not offered documentary evidence of Defendants' contacts with Nebraska.  With respect to contradictory statements by the Defendants, NMC notes that Defendants stated they have "never issued any licenses related to these photos to any person or company in Nebraska." (Filing No. 22 at 24.) NMC argues that this statement raises the question of whether *any* of Defendants' photos have been licensed in Nebraska. NMC also notes that Defendants stated they have no records that indicate they received communications from an NMC employee. NMC argues that this does not mean that

14

"records do not exist or that they never existed," and NMC should be permitted to test this claim. (*Id.* at 24-25.)  The Court concludes that NMC's basis for seeking discovery is mere speculation, and the Court will not permit jurisdictional discovery on such grounds.

## CONCLUSION

For the reasons stated, the nature and quality of Defendants' alleged contacts with Nebraska are insufficient to establish personal jurisdiction over Defendants. Further, NMC has not demonstrated that additional discovery on the question of personal jurisdiction is warranted.

 Accordingly,

IT IS ORDERED:

1.      The Motion to Dismiss Complaint or, in the alternative, to Transfer Venue (Filing No. 17), filed by Defendants Erickson Productions, Inc., and Jim Erickson, is granted;

2.      This case is dismissed without prejudice; and

3.      A separate judgment will be entered.

Dated this 8th day of December, 2014

                    BY THE COURT:

                    s/Laurie Smith Camp
                    Chief United States District Judge

15